**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE DISTRICT OF RHODE ISLAND**

**UNITED STATES OF AMERICA**

**vs.** **CR. No. 06-60S**

**DAVID GALLAGHER**

# MOTION TO SUPPRESS STATEMENTS

Now comes the defendant, David Gallagher, by and through counsel, and moves this honorable court to enter an Order suppressing all statements made by the defendant following his arrest on May 16, 2006. As grounds for this motion, the defendant avers and states that any statements made were coerced and involuntary in violation of his Fifth Amendment rights, or were the poisoned fruit of an unlawful search conducted in violation of his Fourth Amendment rights.

The defendant relies on the accompanying memorandum in support of this motion. Defendant requests an evidentiary hearing.

DAVID GALLAGHER
By his attorney,

_/s/_Thomas G. Briody_
R.I. Bar no. 4427
72 Pine Street
Providence, RI 02903
(401) 751-5151
(401) 331-7454 (facsimile)
Tbriodylaw@aol.com

CERTIFICATION

The undersigned certifies that on this 18th day of August, 2006, the defendant mailed a true copy of this motion to Sandra Beckner, Assistant United States Attorney, Bank of America Center, Providence, RI 02903, by first class mail, and filed the document electronically, where it may be viewed and downloaded via the ECF system.

/s/Thomas G. Briody

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF RHODE ISLAND

**UNITED STATES OF AMERICA**

**vs.** **CR. No. 06-60S**

**DAVID GALLAGHER**

## MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS STATEMENTS

### Introduction

David Gallagher was arrested pursuant to a federal warrant on May 16, 2006.[1] At the time of his arrest, DEA and Newport police officers searched Gallagher's motel room. The officers seized cocaine base and other contraband. Gallagher thereafter made incriminating statements that were tape-recorded along with a hand-written statement. For the reasons set forth in this memorandum, the police and DEA violated the Fourth Amendment when they searched Gallagher's room. Further, any statements he made to the police were coerced, and flowed directly from the unconstitutional misconduct of the police. The statements should therefore be suppressed.

### Facts

David Gallagher is 35 years old, and a resident of Newport, Rhode Island. He is a drug abuser, who is addicted to cocaine. Prior to his arrest, he supported himself as a housepainter, and lived in a Newport motel known as the Pineapple Inn. Gallagher lived in Room 117. He kept his clothes and belongings inside the motel room, and treated the room as his dwelling place.

[1] The warrant was based on his indictment in this case.

In the spring of 2006, the DEA commenced a series of undercover drug purchases in Newport. As part of its investigation, the DEA alleges that Gallagher sold approximately 9.6 grams of cocaine base to an informant on April 10, 2006. Evidence was presented to a federal grand jury, and an indictment was returned based on this alleged transaction.

On the evening of May 16, four law enforcement agents prepared to serve a federal arrest warrant on Gallagher, waiting for him to return to his room at the Pineapple Inn. Gallagher was arrested in the early evening. The police claim that Gallagher was "observed going into room #117… a location known to utilize [sic] by Gallagher," and that "Gallagher was arrested without incident." According to the agents, Gallagher was given Miranda warnings and consented to a search of his room. Agents seized cocaine, marijuana and a scale.

The police reports do not reveal that Gallagher was in fact arrested at gunpoint near the entrance to the motel office, approximately 75-100 feet away from his room. Gallagher was placed in a police vehicle parked some distance from his motel room and positioned so that he could not observe the entrance to the motel room. While Gallagher was inside the police vehicle, agents obtained a key to room 117 from a motel employee, and entered the room without his knowledge.

In addition to being arrested at gunpoint, Gallagher states he was patted down for weapons, and his pants were pulled down by agents during the search. The agents had an arrest warrant, but not a search warrant. For several minutes, the police tried to question Gallagher, telling him "we know you have drugs in your room." The police vehicle was

then moved to just outside of room 117, where Gallagher could finally see that agents were already inside.

The young woman who accompanied Gallagher was searched and questioned by DEA agents. Gallagher told the agents that the young woman had nothing to do with his arrest. Gallagher was also worried about another woman who had belongings inside his room and who had leased the room in her name. While Gallagher remained handcuffed and seated in the back seat of a police car, an agent suggested that if Gallagher disclosed where drugs were located inside his room, the women would have nothing to worry about and would not be charged with a crime. It was at this point that Gallagher admitted that there was contraband inside his room. The police located the contraband—more than 20 grams of cocaine base-- inside a plastic bag in room 117.

Gallagher was then driven to the Newport police station, where he was given written Miranda warnings. Task Force Agent Naylor showed him a series of video surveillance tapes that allegedly depicted Gallagher making drug sales to an informant. Gallagher gave a tape recorded statement at approximately 6:30 p.m. The statement reads like a cross-examination, with Naylor asking leading questions, and Gallagher mumbling affirmative responses to most of them. While Gallagher's statements are incriminating, it is impossible to determine which transactions are being discussed, as no dates, times or other means of identification is made of the events depicted in the videos. Gallagher also prepared a handwritten statement in which he writes, "The drugs in the Pineapple Inn were mine soley[sic]. I did everything on my own and kept women around me to keep me out of trouble."

## The Applicable Law and Argument

### 1. There Was No Valid Consent to Search

The Fourth Amendment to the United States Constitution prohibits searches and seizures without a warrant based on probable cause. The constitutional protections against unreasonable searches and seizures of homes extend to guest rooms in commercial establishments. Stoner v. California, 376 U.S. 483, 490 (1964), United States v. Baldacchino, 762 F.2d 170, 175 (1st Cir. 1985). As a motel guest who kept his belongings inside room 117, Gallagher had a reasonable expectation of privacy in the room.

An exception to the warrant requirement exists where a search is based on consent. Proof of a valid consent to search requires prosecutors to show that the consent was knowingly, intelligently and voluntarily given. United States v. Perez-Montanez, 202 F.3d 434, 438 (1st Cir. 2000). Whether consent was voluntary or the result of coercion is a question of fact to be determined from an examination of the totality of circumstances. United States v. Twomey, 884 F.2d 46, 51 (1st Cir. 1989) (citations omitted). Factors to be considered include age, education, experience, knowledge of the right to withhold consent, and evidence of coercive tactics. Id. at 51.

In this case, the defendant denies that any consent was given. It appears that Mr. Gallagher was arrested at gunpoint, was partially undressed during a search, then handcuffed and placed inside a vehicle. There is no evidence that a written consent form was used prior to the search. Cf. United States v. Marshall, 348 F.3d 281 (1st Cir. 2003)

(written consent obtained before search of room belonging to burglary suspect). There is no evidence that Gallagher was advised of his right to withhold consent. Under these circumstances, it is difficult to imagine that "consent" was provided in a constitutional manner, free of coercion.

**2. There was No Valid Fifth Amendment Waiver.**

A defendant may waive his Miranda rights if the waiver is made voluntarily, knowingly, and intelligently. See Miranda v. Arizona, 384 U.S. 436, 444 (1966). To determine the voluntariness of a waiver, it is necessary to look at the totality of the circumstances, see Arizona v. Fulminante, 499 U.S. 279, 285 (1991), including "the tactics used by the police, the details of the interrogation, and any characteristics of the accused that might cause his will easily to be overborne." United States v. Palmer, 203 F.3d 55, 62 (1st Cir. 2000), quoting United States v. Rohrbach, 813 F.2d 142, 144 (8th Cir. 1987); see also United States v. Jackson, 918 F.2d 236, 241 (1st Cir. 1990). The court must presume that a defendant did not waive his rights. Jackson, 918 F.2d at 241. The government must prove a defendant's valid waiver by a preponderance of the evidence. See Colorado v. Connelly, 479 U.S. 157, 168 (1986).

David Gallagher is not a stranger to the police. He has a criminal record that includes convictions for prior drug offenses and robbery. But he also is a substance abuser, and had used cocaine on the day of his arrest. Police officers and DEA agents, serving a federal warrant, pointed guns at him, and stopped him in a parking lot. Mr. Gallagher was unarmed, and in the company of a young woman. He was placed against a car and searched, and his pants were pulled down by police officers. The young woman was also searched and questioned, and Gallagher was concerned for her welfare.

According to Mr. Gallagher, a police officer said that his cooperation with them would mean that neither the young woman nor anyone else associated with the use of Room 117 would be arrested. In fact, no one other than Mr. Gallagher was arrested at the Pineapple Inn.

Gallagher's subjective state of mind is corroborated by the written statement he gave to the police. In it he accepts full responsibility for any drugs seized in his motel room. The written statement supports his assertion that he cooperated because he feared that the young woman would be arrested.

### 3. The Unlawful Search Renders any Statement By David Gallagher Poisoned Fruit.

Search of a hotel room without a warrant is blatantly unreasonable. While the defendant is not charged in this indictment with possession of the contraband seized in his motel room, the police used the fruits of an unlawful search when they obtained statements from Gallagher at the scene of his arrest and later during his tape-recorded statement at the police station.

In Brown v. Illinois, 422 U.S. 590 (1975) the United States Supreme Court held that a voluntary statement to police, even one that is given following Miranda warnings, may still be suppressed as poisoned fruit if it is the product of a Fourth Amendment violation. In interpreting Wong Sun v. United States, 371 U.S. 471 (1963), the court held that a statement must not only meet the voluntarinesss standard established by the Fifth Amendment, but that it be sufficiently an act of free will to purge the primary taint created by a violation of the Fourth Amendment. The question whether a confession is

the product of free will under Wong Sun must be answered on the facts of each case. Brown, 422 U.S. 590, 603 (1975).

Miranda warnings are an important factor in determining whether a confession has been obtained by exploiting an illegal search, but they are not the only factor. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct are all relevant. Id., at 604, United States v. Ruben-Acosta, 157 F.3d 9 (1st Cir. 1998) (citing United States v. Butts, 704 F.2d 701, 704-05 (3rd Cir. 1983)).

In this case, the court should find that the search of Mr. Gallagher's motel room without a warrant violated the Fourth Amendment. The confession was made within a short period of time after the search. Further, if the police entered Mr. Gallagher's room before obtaining his consent, their misconduct was flagrant, and in violation of his rights. The fact that Miranda warnings were given does little to dissipate the taint of illegal conduct; the police had entered Gallagher's room, and it was reasonable for him to believe that they were authorized to be there. Drugs were seized, and Gallagher reasonably believed that his only course of action was to speak to the officers.

DAVID GALLAGHER
By his attorney,

_/s/ Thomas G. Briody_
R.I. Bar no. 4427
72 Pine Street
Providence, RI 02903
(401) 751-5151
(401) 331-7454 (facsimile)
Tbriodylaw@aol.com

CERTIFICATION

The undersigned certifies that on this 18th day of August, 2006, the defendant mailed a true copy of this memorandum to Sandra Beckner, Assistant United States Attorney, Bank of America Center, Providence, RI 02903, by first class mail, and filed the document electronically, where it may be viewed and downloaded via the ECF system.

/s/Thomas G. Briody