**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CR. No. 06-060S** |
| | ) | |
| **DAVID GALLAGHER** | ) | |

**GOVERNMENT'S OBJECTION TO**
**DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**

Comes now the United States of America, by and through its attorneys, Robert Clark Corrente, United States Attorney, and Sandra R. Beckner, Assistant United States Attorney, and hereby objects to Defendant's Motion to Suppress Statements for reasons stated in the accompanying memorandum.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ SANDRA R. BECKNER
SANDRA R. BECKER
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

On the 28th day of August, 2006, I caused the Government's Objection to Defendant's Motion to Suppress Statements, along with its accompanying Memorandum, to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Thomas Briody, Esquire
72 Pine Street
Providence, RI 02903

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant United States Attorney

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CR. No. 06-060S** |
| | ) | |
| **DAVID GALLAGHER** | ) | |

**MEMORANDUM IN SUPPORT OF**
**GOVERNMENT'S OBJECTION TO**
**DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**

Comes now the United States of America, by and through its attorneys, Robert C. Corrente, United States Attorney, and Sandra R. Beckner, Assistant United States Attorney, and responds to the Defendant's Motion to Suppress Statements as follows:

The defendant claims that his statements should be suppressed because they are the "fruit" of an illegal search, and because the defendant did not voluntarily waive his Fifth Amendment rights. He is wrong.

**FACTS**

This case stems from a number of sales of "crack" cocaine the defendant made to an individual cooperating with the Drug Enforcement Administration (DEA). The first of these occurred on March 31, 2006 at 4 p.m. when the defendant sold $300 worth of crack cocaine to the cooperator during a controlled buy. That same day, at 6:45 p.m., the defendant sold another $500 worth of crack cocaine to the cooperator. Then again, on April 7, 2006, the defendant sold 9.2 grams of crack cocaine to the same government cooperator for $500. And yet again, on April 10, 2006, the defendant sold 9.5 grams of crack cocaine to the government cooperator for $500.

During all of these controlled purchases of crack, the agents followed standard procedures in that the cooperator and his vehicle were searched for money and contraband both before and

after the buy; the cooperator was outfitted with a transmitter which allowed agents to listen to the transaction as it occurred; hidden cameras were placed in the cooperator's vehicle; and the agents conducted surveillance of the drug deals. While listening to the first drug transaction between the defendant and the cooperator, the agents heard the defendant tell the cooperator if the police approach him while he is carrying drugs, he will fight them, and that he'd rather have the assault charge than the drug charge, or words to that effect.

On May 10, 2006, a federal grand jury sitting in the District of Rhode Island indicted the defendant for possessing with the intent to distribute 9.5 grams of crack cocaine on April 10, 2006. Upon return of the indictment, agents obtained a federal arrest warrant. On May 16, 2006, agents executed the arrest warrant at the Pineapple Motel in Newport, RI. Prior to execution of the warrant, agents were briefed on the defendant's criminal history and his violent nature. Specifically, agents were advised of the threat made towards law enforcement during the first buy as well as the defendant's convictions for assault, robbery, kidnaping, obstructing police, narcotics trafficking, carrying a pistol without a license, possession of a firearm after conviction of a crime of violence, and assault on a correctional officer. Additionally, agents with the DEA know through their training and experience that drug dealers such as the defendant are often armed and violent. Accordingly, agents took all precautions in executing the warrant on the defendant.

When they arrived at the Pineapple Motel, agents observed the defendant getting into a vehicle with his girlfriend. Because of the danger posed to the agents by the defendant, the agents arrested him at gunpoint. The defendant was handcuffed and placed in the rear of a police car.

At that time, Task Force Agent (TFA) Mike Naylor, read the defendant his *Miranda* rights and asked for consent to search his motel room. The defendant gave TFA Naylor his consent, and told agents the "crack is in the corner." The defendant told TFA Naylor that he did not know where his key was, so TFA Naylor obtained a key from a motel employee. Agents began to search the room, but noticed that there were many items in the corner of the room. TFA Naylor approached the defendant again and asked him where the crack was. The defendant directed TFA Naylor to where the crack was located. Agents seized approximately 23 grams of crack, 13 grams of powder cocaine, 2 grams of marijuana, a digital scale with cocaine residue on it, and a box of plastic sandwich bags.

The defendant was taken to the station where TFA Naylor read him his *Miranda* rights again. This time the defendant executed a written waiver (see Exhibit 1), and he gave a recorded statement to TFA Naylor. Prior to giving a recorded statement (see Exhibit 2), the defendant made various admissions regarding the above-described drug transactions. In addition, he told TFA Naylor, "I knew he (cooperator) was working with the police. I remember seeing that van at Burger King. I kept thinking I should just kill him. I would lie in bed thinking I should just kill him."

The defendant filed a motion to suppress his statements made at the police station. He argues that his confession should be suppressed because the agents violated his Fourth Amendment rights when they searched the room, and his Fifth Amendment rights when they questioned him.

## ARGUMENT

### I. THE DEFENDANT'S FOURTH AMENDMENT CLAIM IS WITHOUT MERIT BECAUSE HIS CONFESSION IS NOT THE "FRUIT" OF AN ILLEGAL ARREST.

While a confession rendered after an illegal arrest may be suppressed if such confession is not sufficiently attenuated from the illegal seizure, *see Wong Sun v. United States*, 371 U.S. 471, 486-491 (1963) and *Brown v. Illinois*, 422 U.S. 590, 603-605 (1975), the defendant cites no precedent for suppressing a confession given after a valid arrest that may have coincided with, but was not based upon, an allegedly illegal search. In fact, unlike in *Wong Sun* and *Brown*, the defendant does not even contest the legality of his arrest.

In this case, the defendant confessed after he was arrested pursuant to a federal warrant issued upon indictment. The defendant's admissions began after being advised of his *Miranda* warnings, but before agents even searched his motel room. The defendant was given his *Miranda* warnings again at the station, where he waived them in writing and gave a full confession. In short, the defendant's confession is the "fruit" of a valid seizure, not an illegal search. *See United States v. Paradis*, 351 F.3d 21, 33-35 (1st Cir. 2003) (denying defendant's motion to suppress statements because, even assuming the illegal search may have played a role in the statement, the interview would have occurred regardless of the illegally obtained evidence). Thus, the legality of the search is a red herring.

### II. THE SEARCH OF DEFENDANT'S MOTEL ROOM WAS LEGAL BECAUSE THE DEFENDANT VOLUNTARILY GAVE AGENTS CONSENT TO SEARCH.

"In order to be effective, a person's consent to a search must be freely and voluntarily given." *United States v. Coraine*, 198 F.3d 306, 309 (1st Cir. 1999). "Voluntariness turns on a

number of factors, including the person's 'age, education, experience, intelligence, and knowledge of the right to withhold consent.'" *Id.* (quoting *United States v. Barnett*, 989 F.2d 546, 555 (1st Cir. 1993)). "The court can also consider 'whether the consenting party was advised of his or her constitutional rights and whether permission to search was obtained by coercive means or under inherently coercive circumstances.'" *Id.*; *see also United States v. Blais*, 98 F.3d 647, 650-51 (1st Cir. 1996) ("[W]hile the failure to inform an individual that he has a right to withhold consent is a factor to be weighed in determining the issue of voluntariness, such a failure does not preclude a finding of valid consent.").

In this case, the defendant argues that his consent to search was involuntary because he was arrested at gunpoint, he was partially undressed, handcuffed, placed in the back of the police vehicle, not advised of his right to refuse consent and because he did not consent in writing. The defendant's argument fails for several reasons.

As a preliminary matter, the defendant's version of the facts is in error. Agents did not undress the defendant. Furthermore, TFA Mike Naylor did advise defendant that he did not have to consent to a search of the room.

That being said, defendant, a dangerous felon with convictions for violent felonies, narcotics trafficking and assault upon law enforcement, was arrested at gunpoint, handcuffed and placed in the back of a police vehicle.[1] Accordingly, at the time defendant consented to a search

[1]The agents conducting the arrest were advised of the defendant's criminal history and that he was a danger. In addition to his criminal history, agents were aware that defendant had told the cooperator that he would flee from the police, and that he would rather take an assault charge than a drug charge. Accordingly, the agents executing the federal arrest warrant took every precaution, including utilizing weapons, to ensure that no one was killed or injured while apprehending the defendant.

of his motel room, he was in custody, although the weapons were no longer drawn. *See United States v. Trueber*, 238 F.3d 79, 95 (1st Cir. 2001) (stating that custody alone does not invalidate consent); *see, e.g. United States v. Mitchell*, 209 F.3d 319, 324 (4th Cir. 2000) (holding defendant's consent to search was voluntary although the officers arrested the defendant at gunpoint); *United States v. Zapata*, 180 F.3d 1237, 1241 (11th Cir. 1999); *United States v. Espinosa-Orlando*, 704 F.2d 507, 513 (11th Cir. 1983) (holding environment not unduly coercive where individual was arrested at gunpoint, was forced to lie on the ground near the roadway, and gave consent while officer still had gun drawn).

Nonetheless, the defendant's consent was voluntary. Prior to giving his consent to search, the defendant was not only advised that he did not have to consent, but he was also advised of his *Miranda* warnings. *See Coraine*, 198 F.3d at 309 (considering the fact that the defendant had been advised of his *Miranda* warnings prior to giving his consent as a factor suggesting that defendant's consent was voluntary). Furthermore, at the time defendant gave TFA Naylor consent, he was in the back of the police car, and the agents no longer had their weapons drawn. As pointed out by defense, the defendant has had considerable experience with law enforcement, a factor that also weighs in favor of a finding of voluntariness. *See United States v. Jackson*, 918 F.2d 236, 242 (1st Cir. 1990) (determining the defendant's *Miranda* waiver was voluntary in light of his experience with law enforcement). Finally, the court should consider the manner in which the defendant conducted himself as evidence of his willingness to cooperate. Specifically, the defendant pointed the agents to the exact location of the drugs, a fact that suggests the defendant was not hesitant to cooperate with a search. *See Mitchell*, 209 F.3d at 324 (finding defendant's consent to be voluntary in light of his age, past arrests, and willingness

to tell the police exactly where they could find the firearm even though defendant was arrested at gunpoint, not given *Miranda* warnings and not advised of his right to refuse consent). Based on the foregoing, the search of the defendant's motel room was legal, and to the extent any statements made by him were "fruit" of this search, the statements, as well as the evidence seized, are admissible.

**III. THE DEFENDANT VOLUNTARILY WAIVED HIS FIFTH AMENDMENT RIGHTS.**

As in the case of a challenge to the voluntariness of the defendant's consent, an admission is considered voluntary unless the "will of the defendant was overborne so that the statement was not his free and voluntary act." *Jackson*, 918 F.2d at 241. "After assessing the totality of the circumstances attending a defendant's confession, *see, e.g.,* 18 U.S.C. § 3501(b), [the Circuit Court] will affirm the denial of a motion to suppress provided the government proved, by a mere preponderance of the evidence, that there was a valid waiver." *United States v. Rojas-Tapia*, 446 F.3d 1, 5 (1st Cir. 2006); *United States v. Palmer*, 203 F.3d 55, 62 (1st Cir. 2000). Factors to be considered in determining voluntariness include "age, education, experience, intelligence, and knowledge of the right to withhold consent." *Coraine*, 198 F.3d at 309; *see also Barnett*, 989 F.2d at 555.

Defendant now argues that his waiver of his Fifth Amendment rights was involuntary because he was not a "stranger to the police" and has a criminal record, was under the influence of cocaine at the time he confessed, was arrested at gunpoint, his pants were pulled down, and "a police officer said that his cooperation with them would mean that neither the young woman nor

anyone else associated with the use of Room 117 would be arrested." Defendant's argument fails.

Some of the defendant's claims with respect to his waiver of his Fifth Amendment rights have already been addressed. As already stated, the defendant's pants were not lowered during his arrest, and even if they were, there is no significance to such action. Likewise, as stated above, the defendant's familiarity with the criminal justice system is a factor that weighs in favor of finding a voluntary waiver. *See Rojas-Tapia*, 446 F.3d at 8; *Jackson*, 918 F.2d at 242.

Additionally, the defendant's arrest at gunpoint pursuant to a valid federal arrest warrant has no bearing upon his Fifth Amendment waiver. The first time defendant was read his rights, he was in the back of the patrol car and there were no weapons pointed at him. The second time he waived his privilege, the defendant was at the station and he waived his rights in writing. (See Exhibit 1). Once again, there were no guns pointed at the defendant during this second waiver. The fact that the arrest was effected with weapons as a result of real officer safety concerns does not negate defendant's waiver of his rights that occurred after the weapons were holstered. *See Trueber*, 238 F.3d at 95 (stating that custody alone does not invalidate consent); *see, e.g., Mitchell*, 209 F.3d at 324 (holding defendant's consent to search was voluntary although the officers arrested the defendant at gunpoint); *Zapata*, 180 F.3d at 1241; *Espinosa-Orlando*, 704 F.2d at 513 (holding environment not unduly coercive where individual was arrested at gunpoint, was forced to lie on the ground near the roadway, and gave consent while officer still had gun drawn).

The defendant has raised two additional claims during this portion of his brief. Namely that the woman on the scene was threatened, and that he was under the influence at the time of

his waiver. Both arguments lack merit. First of all, the agents on the scene at no time threatened to arrest the woman who was present. In fact, the woman on the scene was cooperative with law enforcement, and was merely told to sit on the curb and not use her phone until the agents were finished executing the arrest warrant and performing the consent search of the motel room. The defendant, not the woman, sold crack cocaine to the cooperator on numerous occasions. He was the target of the investigation, and he was the one being arrested that day.

Likewise, Defendant's claim that he used cocaine on the day of his arrest does not negate his waiver. TFA Naylor, an agent who has dealt with individuals under the influence on numerous occasions, did not observe any signs that the defendant was using drugs at the time of his arrest. The defendant's pupils were not dilated, he was responsive to questioning, he seemed normal and he appeared to be aware of his surroundings.

Even assuming defendant was under the influence at the time of his arrest, "[a] defendant's mental state or condition, by itself and apart from its relationship to official coercion, is never dispositive of the inquiry into constitutional voluntariness. Rather, '[t]he voluntariness of a waiver of this privilege has always depended on the absence of police overreaching, not on 'free choice' in any broader sense of the word.'" *Rojas-Tapia*, 446 F.3d at 7 (quoting *Colorado v. Connelly*, 479 U.S. 157, 170 (1972)). The effects of the narcotic did not hamper his ability to comprehend the situation. Therefore, defendant's waiver cannot be deemed involuntary nor his statements inadmissible. *Palmer*, 203 F.3d at 61 (defendant's weakened mental state caused by heroin withdrawal not deficient, where he appeared clear-headed, and knowingly and intelligently waived his rights); *see also United States v. Smith*, 218 F.3d 777, 781 (7th Cir.), *cert. denied*, 531 U.S. 1021(2000) (fact that defendant ingested cocaine and sleeping pills forty-five

minutes prior to arrest does not render consent involuntary as she "did not appear to be under the influence of any drugs and responded appropriately to the agents' questions"); *United States v. Turner*, 157 F.3d 552, 555 (8th Cir. 1998) (despite the fact that defendant was intoxicated by PCP at the time he confessed, consent voluntary where evidence showed he understood his rights and knowingly waived them); *United States v. Byrne*, 83 F.3d 984, 989 (8th Cir. 1996) (although defendant was under the influence of methadone, admission was voluntary where she appeared coherent, composed and cooperative during interrogation).

In this case, the defendant, an experienced criminal who certainly has had his *Miranda* rights read to him before, received two *Miranda* warnings. At the station, he signed a written waiver of his Fifth Amendment rights (see Exhibit 1), after orally waiving his rights on the scene. The defendant appeared cogent and clear-headed to TFA Naylor, an agent who has experience dealing with those under the influence of narcotics. The defendant stated that he understood his rights, and from his confession itself, it is evident that he had a clear understanding of what he was being asked.[2] In short, the defendant voluntarily waived his right to remain silent, and confessed to dealing crack cocaine on several occasions.

---

[2] Defendant would respond affirmatively or negatively when he knew the answer to the question, but would respond with "I don't recall" when he didn't know the answer to questions. (See Exhibit 2).

## **CONCLUSION**

For all the foregoing reasons, the defendant has failed to demonstrate that either his consent to the search of his motel room, or his admissions made to the arresting officers were the product of coercive, improper official tactics that undermined his ability to make a rational choice. As such, his motion should be denied.

Respectfully submitted,

UNITED STATES OF AMERICA,

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

On the 28th day of August, 2006, I caused the Government's Objection to Defendant's Motion to Suppress Statements, along with its accompanying Memorandum, to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Thomas Briody, Esquire
72 Pine Street
Providence, RI 02903

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant United States Attorney