**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE DISTRICT OF RHODE ISLAND**

**UNITED STATES OF AMERICA**

**vs.** **CR. No. 06-60S**

**DAVID GALLAGHER**

**MEMORANDUM IN REPLY TO GOVERNMENT'S OBJECTION TO DEFENDANT'S MOTION TO SUPPRESS**

The government has objected to Mr. Gallagher's motion to suppress statements.[1] The government's memorandum, in an apparent effort to smear Mr. Gallagher, alleges a slew of irrelevant and prejudicial facts about uncharged conduct and his criminal history.[2] One argument, however, merits a reply. In its objection, the government states that Mr. Gallagher "cites no precedent" for excluding a statement made after a lawful arrest "that may have coincided with, but was not based upon, an allegedly illegal search." Govt's Memorandum, p. 4. The government notes that Mr. Gallagher was served with a facially valid arrest warrant, and then implies that this court should look no further into the circumstances of his arrest and his statements thereafter, asserting that the statement "is the 'fruit' of a valid seizure, not an illegal arrest." Govt's memorandum, p. 4. This fanciful interpretation is supported neither by the facts nor the law.

---

[1] The government characterizes Mr. Gallagher's motion as one made to "suppress statements made at the police station." Govt's Memorandum at p. 3. This is inaccurate. As set forth in his Motion, Mr. Gallagher seeks to suppress all statements following his arrest on May 16, 2006. This includes any statements made at the motel after Mr. Gallagher was arrested at gunpoint.

[2] The government has charged the defendant with only one drug crime, but uses its memorandum to outline other suspected criminal conduct. There seems to be a very good reason for the failure to indict on other crimes: the surveillance videos obtained by the government do not identify Mr. Gallagher.

What's more, none of the statements in which Mr. Gallagher allegedly threatened to assault police officers or the informant were legibly recorded. Notwithstanding this failure in proof, the government relies on speculation about Mr. Gallagher's threatening statements, characterizing them as "words to that effect." Govt's Memorandum, p. 2.

A lawful arrest, by itself, must not serve to insulate the police from simultaneous or subsequent constitutional violations. Evidence that is the "fruit" of an illegal search or seizure is not admissible, and "[t]he exclusionary prohibition extends as well to the indirect as the direct products of such invasions." United States v. Vega-Rico, 417 F.3d 976 (8th Cir. 2005)(cert. denied 126 S.Ct. 1770 (2006)), quoting Wong Sun v. United States, 371 U.S. 471, 484--85 (1963). "Verbal statements obtained as a result of a Fourth Amendment violation are as much subject to the exclusionary rule as are items of physical evidence discovered during an illegal search." United States v. Yousif, 308 F.3d 820, 832 (8th Cir. 2002) (citing Wong Sun, 371 U.S. at 485 ("the Fourth Amendment may protect against the overhearing of verbal statements as well as against the more traditional seizure of 'papers and effects'")).

The recorded statement given by Mr. Gallagher was the direct product of the search of his motel room. No less than 7 of the first 13 questions posed to Mr. Gallagher concern the search and seizure of materials from his motel room. Later in the statement TFA Naylor returns to the same subject, saying "you took total possession of the drugs found in your room, is that fair to say?" Gallagher Statement, p. 4.

There can be little doubt that the contraband seized by the agents during the search of Mr. Gallagher's room was a high priority during Gallagher's interrogation, and that TFA Naylor was interested in more than simply obtaining an admission about the alleged delivery on April 10, the only delivery for which Mr. Gallagher was indicted. The government's suggestion that Mr. Gallagher's remarks had nothing to do with the seizure made following his arrest is simply wrong.[3] TFA Naylor made a conscious choice to

---

[3] The government produced the entire statement in discovery, and it appears that it will seek to introduce the entire statement at trial. The taped and transcribed interview makes no specific reference to

interrogate Mr. Gallagher, and decided which questions to ask. The questions concerned a wide array of activities, with the recent motel room search prominent among them. It is disingenuous to suggest that Mr. Gallagher's statements were the product only of the arrest, and not the search of the room.

The government's reliance on United States v. Paradis, 351 F.3d 21 (1st Cir. 2003) is, to be charitable, misplaced. In Paradis the police conducted an illegal search of an apartment while attempting to serve a warrant on the defendant. During that unlawful search they seized a firearm. Seven days later, the defendant was arrested. He received Miranda warnings, and then gave an incriminating statement concerning his ownership of the firearm.[4] Based on the unique facts presented, the Paradis court held that the statement was sufficiently attenuated to dissipate any taint from the unlawful search.

The Paradis decision bears little resemblance to the facts surrounding Mr. Gallagher's arrest. Further, the court appeared to accept the proposition that a defendant who has been lawfully arrested may challenge statements made as the result of an illegal search. Paradis, 351 F.3d at 35, fn. 15 ("The facts of this case do not place it squarely within the analysis suggested by Brown v. Illinois and its progeny, because unlike those cases, this case does not involve an allegation that the defendant's statements are the fruit of an illegal arrest. Paradis did not challenge the legality of his arrest on July 3, 2002. Rather, ***the claim is that the defendant's statements were elicited as a result of the illegal search that uncovered the gun***.")(emphasis added).

---

the alleged April 10 delivery. Instead the statement refers to drugs seized from Mr. Gallagher's room and to alleged deliveries that TFA Naylor claims to have "on tape."

[4] Unlike this case, the defendant in Paradis did not challenge the voluntariness of his statement. Paradis, 351 F.3d at 35.

The government calls the defendant's claim a red herring. But this is a suppression motion, not a mystery novel. The proposition that a lawfully arrested defendant may challenge statements that are the fruit of an unlawful search conducted simultaneously with the arrest makes eminent sense. To hold otherwise would permit police officers to violate the Constitution so long as they possess a valid arrest warrant. While the government believes that Mr. Gallagher is a bad person, it is well settled that "even unsavory persons have constitutional rights." See United States v. Vigeant, 176 F.3d 565, 574 (1st Cir. 1999). The defendant's motion should proceed to a hearing.

DAVID GALLAGHER
By his attorney,

__/s/ Thomas G. Briody_

R.I. Bar no. 4427
72 Pine Street
Providence, RI 02903
(401) 751-5151
(401) 331-7454 (facsimile)
Tbriodylaw@aol.com

CERTIFICATION

The undersigned certifies that on this 30th day of August, 2006, the defendant electronically filed a true copy of this Reply memorandum to Sandra Beckner, Assistant United States Attorney, Bank of America Center, Providence, RI 02903, and that this document may be viewed and downloaded via the ECF system.

/s/Thomas G. Briody