**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE DISTRICT OF RHODE ISLAND**

**UNITED STATES OF AMERICA**

**vs.** **CR. No. 06-60S**

**DAVID GALLAGHER**

**MOTION FOR DOWNWARD DEPARTURE OR**
**VARIANCE FROM THE SENTENCING GUIDELINES**

Now comes David Gallagher, by and through his counsel, and moves this honorable court to grant a downward departure or in the alternative for a variance from the federal sentencing guidelines. The defendant relies on the accompanying memorandum in support of this motion.

DAVID GALLAGHER
By his attorney,

_/s/ Thomas G. Briody_

R.I. Bar no. 4427
72 Pine Street
Providence, RI 02903
(401) 751-5151
(401) 331-7454 (facsimile)
Tbriodylaw@aol.com

CERTIFICATION

The undersigned certifies that on this 16th day of May, 2007, the defendant transmitted a true copy of this motion to Sandra Beckner, Assistant United States Attorney, Bank of America Center, Providence, RI 02903, via the ECF system.

/s/ Thomas G. Briody

**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE DISTRICT OF RHODE ISLAND**

**UNITED STATES OF AMERICA**

**vs.** **CR. No. 06-60S**

**DAVID GALLAGHER**

**MOTION FOR DOWNWARD DEPARTURE OR**
**VARIANCE FROM THE SENTENCING GUIDELINES**

David Gallagher awaits sentencing following his plea to one count of possession with intent to distribute 9.5 grams of cocaine base. Mr. Gallagher is a career offender. In the ordinary case, Mr. Gallagher's guideline range would provide for a sentence of 188 to 235 months. Due to the government's filing of a sentencing enhancement pursuant to 18 U.S.C. 851, Mr. Gallagher faces a minimum sentence of 120 months and a guideline sentencing range of 262 to 327 months.

Mr. Gallagher has a criminal history that includes convictions for drug offenses and assault. But that criminal history is misleading, and overstates the seriousness of his criminal record. Mr. Gallagher does not contest his guilt in this case, and the guidelines and federal criminal statutes clearly contemplate a harsh sentence. But this court must consider the whole person who faces punishment. It must also consider the circumstances in which this offense was committed, as well as the factors enumerated in 18 U.S.C. 3553. This is no simple task, for David Gallagher is a complex person, the product of a dysfunctional family and a victim of serious child abuse. Despite these terrible circumstances, Mr. Gallagher has the support of a loving family. He is worthy of redemption, and undeserving of the harsh sentence contemplated for 851 offenders. This

memorandum argues that a just sentence in this case should deviate dramatically from the guidelines, recognizing that any sentence in excess of 10 years is more than sufficient punishment for Mr. Gallagher's offense.

**Mr. Gallagher's Background and Upbringing**

As noted in the Pre-Sentence Investigation (PSI), David Gallagher was born to Jeanne Gallagher and Theodore Swetnam. David's parents never married, and he has one older brother who was also born from this union. David also has three half sisters and half brothers. The PSI does not mention that David's mother is white and his father is black.

David Gallagher's toddler years were marred by abuse from one of his mother's boyfriends and the absence of any true father figure in the family home. His mother recounts a story of David being assaulted at age 2 by the father of one of her other children. The boyfriend had been attempting to "romance" a young babysitter in the house and became enraged when David's cries interrupted him. David spent the night in the hospital and begged his mother not to leave him again. It is difficult to imagine how episodes like this one damaged Mr. Gallagher.

Jeanne Gallagher spent much of her time working to support her children, and David recalls growing up poor in "the projects" without supervision. Jeanne Gallagher admits, and David and his sister Keisha confirm, that Jeanne was a stern disciplinarian who often used corporal punishment when she was with her children.

David's sister Keisha Walker also recalls a peculiar form of racism experienced by the children. David's maternal grandmother was kind to him and to his brother Paul, both of whom had lighter skin. But the grandmother was more hostile to Kyeme

Gallagher, who had darker features. Keisha believes that the lesson was not lost on David, who witnessed the way his darker sibling was treated. Keisha states that her older brother Paul abused alcohol and drugs from an early age, and that there was a lot of "yelling" and "drama" at home. In her opinion, David left the house to escape this environment.

David Gallagher has five children of his own, and has devoted a great deal of effort to raising money to support them. David acknowledges that he committed the offense in this case to provide for his family. At the same time, he suffers pain from a back injury that dates to his teenage years, and self medicates with drugs and alcohol. Based on the letters submitted from relatives and family friends, David's children love their father. David's family also supports him. David's brother Paul writes that his son "is not the monster the prosecution depicts him to be." His sister, Keisha, describes David as highly intelligent and talented as an artist. She notes the frustration her brother felt when, while still young and saddled with a serious criminal record, David was unable to find jobs that paid a decent wage. The letters do not excuse or condone Mr. Gallagher's conduct; they do, however, reveal a man who sought legitimate employment, who tried to support his children, who cared for family members and brought them joy.

Despite multiple arrests and convictions for drug offenses, the PSI indicates that David Gallagher has never had substance abuse treatment. He has spent much of his adult life abusing drugs and alcohol, apparently self-medicating to deal with pain from a back injury. Mr. Gallagher has never been evaluated for mental health impairments or impediments. The state court system that has incarcerated Mr. Gallagher on several occasions has provided very little to assist in his rehabilitation.

**The Law on Sentencing**

Sentencing guidelines in federal criminal proceedings are advisory since United States v. Booker, 128 S.Ct. 738 (2005). A decision on a particular sentence is reviewed based on whether it is "reasonable," regardless of whether it falls within or without the guideline sentencing range. United States v. Jimenez-Beltre, 440 F.3d 514, 517 (1st Cir. 2006). A sentence must have a plausible reason behind it and a "defensible overall result." Id., at 519. A defendant is not required to make an extraordinary showing that a sentence below the guideline range is warranted. Id., see also United States v. Rivera, 448 F.3d 82, 85 (1st Cir. 2006). A court may permissibly consider a defendant's tragic childhood circumstances. Id. The court must impose a sentence that is sufficient, but not greater than necessary to comply with the factors set forth in 18 U.S.C. 3553 (a)(2). Those factors may include

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or correctional treatment.

The court should also avoid unnecessary sentencing disparity, for defendants with similar criminal records. 18 U.S.C. 3553 (6).

**Mr. Gallagher's Offense Was Relatively Minor**

**And His Criminal History is Overstated.**

David Gallagher sold cocaine base to an informant. He did so on three occasions in March and April of 2006. The amounts were small; none of the sales was for more than ten grams. Mr. Gallagher never displayed a weapon. Indeed, he had no weapon when arrested a month later. While Mr. Gallagher was selling drugs, he also supported himself as a housepainter. Simply put, David Gallagher was a small-time—and part-time-- drug peddler living in a cheap motel. His actions were criminal, but they are not of the sort that cries out for lengthy incarceration.

What drives Mr. Gallagher's sentencing range to stratospheric levels is his criminal history, and the 851 sentencing enhancement derived from it. At first blush, this history seems horrendous: there are eleven separate incidents giving rise to criminal charges, dating back to 1985, when David Gallagher was 14 years old. The charges include robbery, kidnapping, assault and breaking and entering.

Closer inspection, however, reveals a different picture. Seven of the incidents occurred while David Gallagher was a teenager. Five of the charges occurred while he was a juvenile. Only two of the juvenile charges resulted in adverse findings against Mr. Gallagher, and neither one involved a sentence of incarceration. David Gallagher was never sentenced to any kind of program—such as Ocean Tides-- that might have helped to guide or rehabilitate him.

The robbery-kidnapping charges—arguably the most serious allegations brought against Mr. Gallagher— occurred in 1989, when Mr. Gallagher was 18 years old. The PSI suggests that the defendant and two others "forcibly and secretly confined" a woman

named Bette Costa against her will. Mr. Gallagher was tried and convicted and sentenced to seven years in prison.

However, the convictions were reversed in State v. Gallagher, 654 A.2d 1206 (R.I. 1995).[1] The Supreme Court of Rhode Island concluded that Mr. Gallagher's trial was tainted by the introduction of irrelevant and unfairly prejudical evidence. At the time of the Supreme Court decision, Mr. Gallagher had been paroled. Mr. Gallagher later pleaded nolo contendere to the robbery charge—on the same day he resolved outstanding drug charges on January 19, 1996. The kidnapping charge was dismissed.

It appears that Mr. Gallagher elected to dispose of a series of charges on the same date—a decision that haunts him as he awaits sentencing before this court. His original sentencing in the robbery/kidnapping case was imposed in May, 1991, almost 15 years before his offense conduct in this case. Under U.S.S.G. 4A1.2(c)(1), the robbery charge counts as part of his criminal history—but it is nevertheless misleading. The charge is an ancient one, and, as noted in footnote one, the evidence of Mr. Gallagher's guilt is hardly overwhelming.

Mr. Gallagher has a 2001 gun possession conviction. It appears that the weapon was found following a report of shots being fired. There is no evidence, however, that Mr. Gallagher ever fired the gun he possessed. Mr. Gallagher also has two convictions for assault, both arising from physical altercations. One occurred when he was just 18 and the other while he was incarcerated at age 31.[2] The more recent incident involved a

---

[1] Chief Justice Weisberger's opinion in State v. Gallagher noted that four defense witnesses contradicted Ms. Costa's version of events on the night of the alleged kidnapping/robbery, all of them confirming that Gallagher was not present. See Gallagher, 654 A.2d at 1208.

[2] The purported victim in the 1989 assault appears to have been the son of a Newport Police Lieutenant. See Gallagher, 654 A.2d at 1208. Once again, Justice Weisberger noted that a witness contradicted the victim's testimony. In any event, this assault was not counted in the criminal history.

dispute with a correctional officer at the ACI, and resulted in a suspended sentence.[3] These are serious charges, but they are not unusual. The 851 enhancement boosts Mr. Gallagher to a criminal history category VI. Without the enhancement, he has ten criminal history points, placing him in category V. Had Mr. Gallagher not been credited with the 1989 robbery charge, he would have seven points, placing him at the low end of category 4.

**Justice Does Not Require a Guideline Sentence.**

The minimum sentence for a defendant facing an 851 enhancement is 120 months. In a system that offers no parole, 120 months for selling 9.5 grams of cocaine base is an extraordinary penalty. The guidelines, however, call for more. Given Mr. Gallagher's status as a career offender, he would face a guideline range 188 to 235 months, or 15 and ½ to 19 and ½ years. That too would be an extraordinary punishment.

Unsatisfied with these penalties, the government moved to enhance Mr. Gallagher's sentence pursuant to 21 U.S.C. 851. The government filed for this enhancement without offering to permit Mr. Gallagher to plead as a career offender. Because the maximum sentence is now elevated to life imprisonment, Mr. Gallagher's advisory guideline range calls for a sentence of approximately 22 to 27 years.

Mr. Gallagher is now 36 years old. Should the court impose the maximum guideline sentence, he would be incarcerated until he is close to 60 years of age. In arriving at a sentence, this court is left to ponder:

1. Is a guideline range sentence is necessary to protect the public?
2. Does a guideline range sentence provide just punishment?

---

[3] Under Rhode Island law, a simple assault involving a correctional officer is treated as a felony. The officer involved in this incident suffered a minor injury. Mr. Gallagher was also injured.

3. Would a sentence below the guideline range provide adequate deterrence?

The defendant respectfully submits that any sentence in excess of ten years is more than sufficient to protect the public. A sentence of 180 months, or fifteen years, would mean that Mr. Gallagher would be incarcerated until he is almost 50 years old.

It is well settled that recidivism declines dramatically as defendants grow older. See *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, United States Sentencing Commission, May, 2004, Section F, p. 14 (Age at sentencing).[4] There is no apparent relationship between a guideline offense level and recidivism risk. Id., p.12, and Exhibit 11. Put another way, there is no correlation between a guideline range and the likelihood of reoffending.

There is no need to impose a guideline range sentence to protect society. Indeed a guideline sentence would result in unduly harsh punishment, far more than necessary to comply with the 3553 factors. Any sentence in excess of the mandatory minimum, will adequately deter similar conduct by Mr. Gallagher and by others.

[4] The USSC report may be found at ://www.ussc.gov/publicat/Recidivism_General.pdf

**Conclusion**

For the reasons cited herein, and those that may be advanced at a sentencing hearing, Mr. Gallagher asks this court to impose sentence at a level substantially below the guideline range.

DAVID GALLAGHER
By his attorney,

_/s/ Thomas G. Briody_

R.I. Bar no. 4427
72 Pine Street
Providence, RI 02903
(401) 751-5151
(401) 331-7454 (facsimile)
Tbriodylaw@aol.com

CERTIFICATION

The undersigned certifies that on this 15th day of May, 2007, the defendant transmitted a true copy of this memorandum to Sandra Beckner, Assistant United States Attorney, Bank of America Center, Providence, RI 02903, via the ECF system.

/s/ Thomas G. Briody